# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWIN AJEO | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-21-1145 |
| DEPARTMENT OF JUVENILE SERVICES, | * | |
| MONTGOMERY COUNTY, | * | |
| THE SECRETARY OF THE DEPARTMENT OF JUVENILE SERVICES, | * | |
| THE WARDEN OF THE MONTGOMERY COUNTY CORRECTIONAL FACILITY, | * | |
| THE MEDICAL DIRECTOR OF THE MONTGOMERY COUNTY DEPARTMENT OF CORRECTION, | * | |
| DOCTOR YOUNES, | * | |
| UNKNOWN DEFENDANTS, et al., | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

On May 14, 2021, the Court directed self-represented plaintiff Edwin Ajeo to file an amended complaint in order to state a viable claim. The Court also instructed the finance officer at Roxbury Correctional Institution to file a certified copy of Ajeo's inmate trust fund account statement to assist in the assessment of the initial partial filing fee required under 28 U.S.C. 1915. The initial partial filing fee will be waived because no trust fund statement has been received, and Ajeo's Motion for Leave to Proceed in Forma Pauperis (ECF No. 4) will be granted based on the information Ajeo has provided. For reasons to follow, the Amended Complaint will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim and Ajeo will be assigned a "strike" under 28 U.S.C. § 1915(g).

## I. Background

Liberally construed, the Amended Complaint alleges pursuant to 42 U.S.C. § 1983 that Ajeo received constitutionally inadequate care for injuries he sustained during the time he was a juvenile pre-trial detainee confined at the Montgomery County Correctional Facility ("MCCF"). Ajeo alleges that on February 19, 2018, he was assaulted at MCCF by several inmates, and suffered a bruised and swollen left eye and a large open gash under his swollen lip.[1] Amended Complaint ECF No. 6 at 3. He was sent to the medical unit, and "after waiting for hours in pain" was taken by police car, not by ambulance, to the Germantown Emergency Center, where x-rays and a CT scan were taken. He was diagnosed with a fracture of his "left orbit," laceration of the lower lip with complication, a closed head injury, and left extraocular muscle entrapment, and sutures were placed on his lip. *Id*. Afterwards, he was transferred to Johns Hopkins Suburban Hospital for an oral and maxillofacial surgical evaluation, where he was instructed to follow-up with an oral and maxillofacial surgeon in one week. He was also instructed to follow-up with a physician at the jail to remove the sutures on his lip. *Id*. Ajeo was discharged to the jail infirmary for observation and returned to the general prison population several days later. *Id*.

Ajeo claims that despite filing numerous sick call slips, his sutures were never removed, and a painful keloid[2] grew over the sutured part of his lower lip. When Ajeo was transferred to the Alfred D. Noyes Center,[3] a physician allegedly informed him that the keloid had developed

---

[1] Ajeo does not assert a failure to protect claim.

[2] A keloid is a growth of extra scar tissue where the skin has healed after an injury. *See* https://medlineplus.gov/ency/article/000849.htm. (visited June 23, 2021).

[3] The Alfred D. Noyes Children's Center near Clarksburg, Maryland, provides secure detention services to youth primarily between the ages of 12-18 who are waiting to go to court or be placed in a treatment facility. *See* https://www.montgomerycountymd.gov.

2

because the sutures were never removed. The physician scheduled Ajeo for surgery to remove the keloid. Ajeo asserts that the surgical procedure was very painful. *Id.*

Ajeo's initial complaint named one defendant, the Department of Juvenile Services. ECF No. 1. The Amended Complaint names six additional defendants: Montgomery County, the Secretary of the Department of Juvenile Services, the Warden of MCCF, the Assistant Warden of MCCF, the Medical Director of the Montgomery County Department of Correction, and Dr. Younes, plus "unknown defendants et al." ECF No. 6.

Ajeo claims the Warden of MCCF, Assistant Warden of MCCF, the Secretary of the Department of Juvenile Services, and Montgomery County and its policy-making officials "knew that the medical care system at MCCF was inadequate. *Id*. at 4. He claims the Warden and Assistant Warden "failed to do anything about it"; juvenile detainees were deprived of or received delayed access to medical care, yet the Secretary of the Department of Juvenile Services failed to do anything to stop these deprivations; and Montgomery County and its policy-making officials failed to implement needed reform. *Id.* at 3-4. Ajeo seeks damages and declaratory relief. *Id*. at 4.

## II. Discussion

### A. Standard of Review

The in forma pauperis statute at 28 U.S.C. § 1915 permits an indigent litigant to commence an action in this court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires this Court to conduct an initial screening of the complaint and to dismiss any claim that is frivolous or malicious, fails to state a claim on which relief may be granted, or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721 (2020).

Further, a prisoner's ability to file a complaint in federal court without first paying the filing fee will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B)(i)(ii) and 1915A(b)(1) as frivolous, malicious, or for failure to state a claim while he is incarcerated. *See* 28 U.S.C. § 1915(g).

A complaint must contain at a minimum a short and plain statement of the claim that shows the plaintiff is entitled to relief and a request for relief. *See* Fed. R. Civ. Proc. 8(a). Each allegation in a complaint should be "simple, concise, and direct." Fed. R. Civ. Rule 8(d)(1). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

This Court is mindful of its obligation to liberally construe pleadings from self-represented plaintiffs, such as the instant Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating that a district court may not "conjure up questions never squarely presented"). The allegations must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 561.

**B. Eleventh Amendment Immunity**

To maintain an action under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the plaintiff suffered a violation of a right secured by the Constitution or laws of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[U]nder the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity." *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54–55 (1996).

While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Absent waiver or a valid congressional abrogation of sovereign immunity, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Therefore, a state, its agencies and departments, cannot be sued in federal court by its citizens without the state's consent. *See* U.S. Const. Amend, XI; *Dixon v. Baltimore City Police Dep't,* 345 F. Supp. 2d 512, 513 (D. Md. 2003); *Raiford v. Maryland Dep't of Juvenile Servs.*, DKC-12-3795 *5, 2014 WL 4269076 (D. Md Aug. 28, 2014). The Maryland Department of Juvenile Services is a department of State government. S*ee* Md. Code Ann., Human Serv. § 9-201. Ajeo's claims against the Department of Juvenile Services for damages are barred by the Eleventh Amendment and must be dismissed.

Because claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity, a suit against the state actor is tantamount to a suit against the state itself, s*ee Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Accordingly, Ajeo's claims for damages against the Secretary of the Department of Juvenile Services, in his or her official capacity, also must be dismissed on the grounds of Eleventh Amendment immunity.

**C. Personal Participation**

Section 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). In the Amended Complaint, however, Ajeo fails to specify how any of the named Defendants personally participated in or delayed his treatment as alleged. Aside from including Dr. Younes and the Medical Director of the Montgomery County Department of Correction in the caption of the Amended Complaint, Ajeo makes no other mention of these defendants. Accordingly, Dr. Younes and the Medical Director of the Montgomery County Department of Correction will be dismissed from this case as defendants.

Respondeat superior[4] is not a recognized theory of liability under § 1983 in the Fourth Circuit. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978)). In order to state a supervisory capacity claim, a plaintiff must allege: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization; and (3) there was an affirmative causal link between the supervisor's inaction

---

[4] Respondeat superior is a legal doctrine that provides an employer is liable in certain cases for the wrongful acts of his employee, and a principal for those of his agent. *See* Black's Law Dictionary (8th ed. 2004).

and the constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994). Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994); *see Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

Ajeo alleges the Secretary of the Department of Juvenile Services, the Warden and Assistant Warden of MCCF, and unidentified "policy-makers" for Montgomery County are culpable because they "knew that the medical care system at MCCF was inadequate" and failed to take remedial action. ECF No. 6. at 3-4. Such summary and conclusory assertion, however, fails to satisfy the requirements for supervisory liability. *Shaw*, 13 F.3d at 798–99. Ajeo provides no information to substantiate his claim that the medical system was inadequate or to connect this purported awareness with the constitutional violation he alleges here. Accordingly, the claims against the Warden and Assistant Warden of MCCF and "Unknown Defendants et al." will be dismissed.

Ajeo has failed to plead or demonstrate any facts showing supervisory indifference to—or tacit authorization of—any misconduct by Department of Juvenile Services or Montgomery County employees. And, as discussed below, Ajeo fails to show that his constitutional rights were violated. Accordingly, Ajeo has necessarily failed to demonstrate that the Department of Juvenile Services or Montgomery County authorized or was indifferent to any such violation.

**D. Fourteenth Amendment**

The Fourteenth Amendment's Due Process Clause protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that

"the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" [to] pretrial detainees "who require it") (citation omitted)); *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992).[5] The United States Court of Appeals for the Fourth Circuit has held that the Eighth Amendment deliberate indifference standard applies to Fourteenth Amendment claims by pretrial detainees for inadequate medical treatment. *Id.* at 991-92 ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs." (citations omitted)); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th. Cir. 2014).

To state a claim for deliberate indifference, a plaintiff must satisfy a two-part inquiry that includes both an objective and a subjective component. *See Raynor v. Pugh*, 817 F.3d 123, 127 (4th. Cir. 2016). First, a plaintiff must show objectively "a serious deprivation" of rights "in the form of a serious or significant physical or emotional injury," *Danser v. Stansberry*, 772 F.3d 340,

---

[5] In *Hill*, the Fourth Circuit adopted the deliberate indifference standard for a pretrial detainee but recognized that the constitutional protections for pretrial detainees could arguably be "greater" than those for convicted prisoners. *Hill*, 979 F.2d at 991. The Supreme Court has since called into question the equivalence between the standards applied to claims by pretrial detainees and those applied to claims by convicted inmates. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court said that, unlike the standard applied to post-conviction excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment does not include a subjective component. *Id*. at 296-97. Several circuits have extended this reasoning to hold that the standard for claims of pretrial detainees alleging inadequate medical care under the Fourteenth Amendment should not include a subjective component. *See Miranda v. Cty. of Lake,* 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118,1124-25 (9th Cir. 2018). In the Fourth Circuit, including courts in this district, courts have declined to extend *Kingsley* to claims of deliberate indifference to a serious medical need, noting that "neither this Court nor the Fourth Circuit has applied Kingsley to a pretrial detainee's claim of failure to protect or deliberate indifference to a serious medical need, where there are no allegations of force applied by the defendants." *See Perry v. Barnes*, No. PWG-16-705, 2019 WL 1040545, at *3 n.3 (D. Md. Mar. 5, 2019); *accord Mays v. Sprinkle*, No. 7:18CV00102, 2019 WL 3848948, at *1 (W.D. Va. Aug. 15, 2019); *Wallace v. Moyer*, CCB-17-3718; 2020 WL 1506343 at 6*n. 9.

346-47 (4th Cir. 2014), or "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). To establish the subjective component, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991) (applying the deliberate indifference standard to conditions of confinement claims). Assuming *arguendo* that removal of Ajeo's sutures amounted to an objectively serious medical need, Ajeo alleges no facts that that Defendants were aware of subordinate conduct or omission that posed excessive risk to his health in this regard and deliberately disregarded it.[6] Even after according the Amended Complaint liberal construction, the Court concludes that Ajeo has failed to state a plausible claim of deliberate indifference against Defendants.

## III. Conclusion

For the foregoing reasons, the Court finds that Ajeo has failed to state a claim. The Complaint will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and Ajeo will be assigned a "strike" under 28 U.S.C. §1915(g). A separate Order follows.

July 13, 2021  /S/
Date  Paul W. Grimm
 United States District Judge

---

[6] To the extent Ajeo intends to state a negligence claim based on state law, the Court declines to exercise supplemental jurisdiction, and will dismiss the state claim without prejudice. 28 U.S.C. § 1367(c)(3) (providing district court may decline to exercise supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction."); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).